# NATIONAL UNION INDEMNITY CO v FULTON et

Ohio Appeals, 5th Dist, Stark Co

Decided Nov 12, 1931 .

Simmons, DeWitt & Vilas, Cleveland, for National Union Indemnity Co.

Burt, Kinnison, Carson & Shadrach, Canton, for Fulton et.

"Unless there is some agreement to the contrary, deposits received by the bank become its property; they belong to it, and can be loaned or otherwise disposed of by it, as any other money belonging to the bank. If the money is stolen or destroyed the loss must be borne by the bank, though it be free from negligence or fault. It is accountable as a debtor; and the relation between it and the general depositor is essentially that of debtor and creditor. In legal effect, the deposit is. a loan to the bank."

Attention is directed to the case of **The Fidelity & Casualty Co. of New York v The Union Savings Bank Co. et, 119 Oh St, 124,** the 2d, 3d and 4th branches of the syllabus, of which are as follows:

"2. The Legislature has made provision for deposit of state funds in §321 et seq., GC, and a deposit when made under authority of those sections creates the relation of borrower and lender between such depositary and the state.

"3. Sec 321 et seq., GC, neither expressly nor impliedly give to the state priority of payment out of the funds of such banking institution in the event of insolvency.

"4. A deposit of state funds in a depositary under authority of §321 et seq., GC, is not an exercise of sovereignty but on the other hand in such a transaction the government is acting in its proprietary capacity."

The Supreme Court of Ohio in this case discusses the general proposition at considerable length, and on page 132 of the opinion states:

"The Legislature having made no provision for priority, it will be presumed that the legislative intent has been exhausted. Clearly, the Legislature had the power to provide for priorities, and, not having expressly made such provision, all other depositors in the banks where state funds are deposited have a right to assume that their deposits are as secure as all other deposits. To so interpret the statutes as to permit priorities in favor of the state would require that matter be read into the statutes which the Legislature has not written in."

The Supreme Court in the final paragraph of its opinion concludes by stating that:

"It is not necessary to discuss the matter of subrogation further than to say that

## MONTGOMERY, J.

It will be seen, therefore, that the only matter to be determined is whether or not under this state of facts, the claim of the plaintiff is a preferred claim against the funds of the bank now in the hands of the defendants as liquidating agents.

It is conceded that the plaintiff has, to the extent of the amount claimed, succeeded to any rights which Stark County might have had, and that the defendants Fulton and Miller have all the rights and are subject to all the duties and liabilities which would have attached to the bank of which they are the liquidating agents.

At the outset the question is presented as to where is the title to this money when the deposit is made in accordance with the statutes. Morse on Banks and Banking, says: "So soon as the money has been handed over to the bank and the credit is given to the payer, it is at once the proper money of the bank." In other words, the title passes at that time and becomes vested in the bank and the county has merely a chose in action.

The proposition is stated in Ruling Case Law, Vol. 3, §149, as follows:

the surety company is entitled to be subrogated to such rights as might be asserted by the state, viz., to present the claim for allowance and payment of dividends on a parity with claims of unsecured creditors."

See also to the same effect **Fidelity & Casualty Co. v Union Savings Bank Co., 29 Oh Ap, 154.**

The statutes construed in **119 Oh St, 124,** supra, are §321 to §330-11 GC inclusive, which statutes control the deposit of state funds, and attention is directed to §330-3 GC, which provides for the security for the deposit of funds and provides the condition of the bond to be accepted for such deposit.

The statutes providing for the deposit of county funds are §2715 to §2749, GC, inclusive and the very great similarity between these two acts and the provisions with reference to deposits and the safeguard thrown around them is apparent.

Had the funds remained in The Canton Bank & Trust Company and it had then become insolvent, there would have been no difference at all between the situation of the plaintiff in the case at bar and the situation of the plaintiff in the case reported in the **119 Oh St, 124.** The plaintiff below, who is the plaintiff in error here, concedes that had the Trust Company remained the depositary it would have had the right to use its funds in the ordinary course of business and concedes that the original deposit was lawful. It attempts to distinguish between what would be the rights of the parties had that condition continued and what are their rights in view of the sale and transfer of the assets of The Canton Bank.

The contention is made that the situation is changed by virtue of what is claimed to have been in effect an illegal act in the transfer, and, in support of the contention, numerous cases are cited by counsel, but it will be observed that all of those cases have to do with deposits illegally made in the first instance.

Suppose that, after the deposit had been made legally, the depositary bank had committed some illegal act whereby its assets had been dissipated and it became insolvent. For instance, §710-121, GC, provides that not more than 20% of the capital and surplus shall be invested in any one stock or security. §710-122, GC, provides that not more than 20% of a bank's paid up capital and surplus shall be loaned to any one person. There are numerous prohibitions in the statutes governing banks in their operation and the management of their funds,

and a disregard of any of these prohibitions would constitute an illegal act on the part of the responsible officers of the bank. Assuming the performance of any of these illegal acts and the consequent insolvency of the depositary bank, could the county or its assignee claim a preference by virtue of its deposit? We think not.

But we fail to see any illegality or any impropriety in the sale or transfer of assets, such as shown in the instant case. The sale was made in accordance with the provisions of §710-86 GC. It will be observed that that section, authorizing such transfer of assets, does not make any exception with reference to public money on deposit. In our judgment such transfer and sale was made in conformity with the statutes and conveys title to the funds to the purchaser bank and we see no conflict between that statute and §2715 et seq., GC.

It will be observed that the plaintiff in error admits that the bond given by it was given in accordance with the statute to secure the funds deposited and that all the statutes of Ohio were complied with, including the giving of a bond and the character of the bond.

It seems to us that this bond was given in contemplation of the fact that The Canton Bank & Trust Company might do whatever the statute permitted. In other words, that it might sell and assign its assets or consolidate with another bank; that when this obligation was entered into, both the bonding company and the county entered into it bound by the knowledge that this thing which the statute permitted might be done.

There is no limitation in this bond and nothing which would relieve it from liability in the event that a sale or consolidation be effected without its knowledge or consent. As admitted by the surety company it signed the bond required by the statute. What kind of a bond was that and what were its provisions? The Section is §2723, GC, and is as follows:

"Such undertaking shall be signed by at least six resident free-holders as sureties or by a fidelity or indemnity insurance company, authorized to do business within the state and having not less than two hundred and fifty thousand dollars capital, to the satisfaction of the commissioners, conditioned for the receipt, safe keeping and payment over of all money with interest thereon at the rate specified in the proposal, which may come under its custody under and by virtue of this chapter and

under and by virtue of its proposal and the award of the commissioners, and conditioned for the faithful performance by such bank or banks or trust companies of all the duties imposed by law upon the depositary or depositaries of the money of the county."

The obligation, therefore, was "for the receipt, safe keeping and payment over of all money." The obligation was absolute on its face and in its terms. In paying the bank the amount of its obligation the plaintiff has but performed its legal duty.

We see nothing in the facts alleged in this petition to entitle the plaintiff in error to any relief other than the relief found available for the plaintiff in error in the case reported in §119 Oh St, 124, supra. The county would have no right, in our judgment, against The Canton Bank or its liquidating agents, other than it would have had against the original depositary or any agency liquidating it, and the plaintiff in error, as surety, has no greater right than its principal would have had.

It follows, therefore, that the judgment of the Court of Common Pleas will be, and the same is, hereby affirmed.

Exceptions may be noted.

SHERICK, PJ, and LEMERT, J, concur.